UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES FIDELITY AND GUARANTY COMPANY, a Maryland Corporation,  Plaintiff, | ) ) ) ) ) | |
| vs. | ) ) | 1:08-cv-1501-RLY-DML |
| ERSAL OZDEMIR, an individual; TAMARA BOLDING, an individual,  Defendants. | ) ) ) ) | |

**ENTRY ON UNITED STATES FIDELITY AND GUARANTY COMPANY'S MOTION FOR SUMMARY JUDGMENT**

**I.  Introduction**

Defendant, Ersal Ozdemir ("Mr. Ozdemir"), was President of Aymir Construction Corporation ("Aymir"). In late 1999 and early 2000, United States Fidelity and Guaranty Company ("USF&G") issued payment and performance bonds to Aymir for three construction projects located in Indiana: the Irvington Branch Library Project ("Irvington"); the Kokomo South Branch Library ("Kokomo"); and the Tippecanoe Public Library ("Tippecanoe") (collectively the "Bonded Projects"). Shortly before issuing the bonds, USF&G required Mr. Ozdemir and his spouse at the time, Tamara Bolding ("Ms. Bolding") (collectively the "Defendants"), to execute a General Agreement of Indemnity (the "Indemnity Agreement"). The Indemnity Agreement provided USF&G with certain indemnity rights, which are summarized below as follows:

(1) the Surety's right to be indemnified and held harmless from any exposure to bond losses (Indemnity Agreement ¶¶ 6, 7);

(2) the Surety's right to settle bond claims and to bind the Indemnitors to any settlement amounts (*Id.* ¶ 8);

(3) the Surety's right to take over and complete any bonded contract in the event of any "Default" by the Principal, at the expense of the Indemnitors (*Id.* at 12);

(4) the Surety's right to recover from the Indemnitors any payments made in good faith, under the belief that it may have exposure to liability or that it was necessary or expedient to make such disbursements (*Id.* ¶¶ 6, 12);

(5) that payments made in good faith encompass "any and all payments made by the Surety except those made with deliberate and willful malfeasance," (*Id.*);

(6) that vouchers or other evidence of payment shall constitute prima facie evidence of the Indemnitors' liability to the Surety (*Id.* ¶ 9); and

(7) that the Surety's indemnity rights include attorneys' fees and legal expenses (*Id.* ¶¶ 6, 14).

Around late 2001, USF&G began receiving claims from subcontractors and suppliers of Aymir seeking payment of amounts due from Aymir on each of the three Bonded Projects. (Affidavit of Timothy Snyder ("Snyder Aff.") ¶ 5). Between March 2002 and May 2004, USF&G made forty-seven separate payments totaling $1,215,649.11

to unpaid subcontractors and suppliers of Aymir pursuant to the Surety's payment bond obligations on these Bonded Projects. (*Id.* ¶ 7, Snyder Aff. Ex. C; *see also* USF&G's Finding of Fact # 17). In addition, USF&G paid $73,255.46 to two contractors that assisted the Surety in completing Aymir's remaining obligations under its performance bonds. (Snyder Aff. ¶ 20, Snyder Aff. Ex. C; *see also* USF&G's Finding of Fact # 20). USF&G's remaining losses totaling $109,717.83 were for reimbursement for legal fees, travel costs, copying costs, and other expenses incurred through June 2009. (Snyder Aff. ¶ 12, Snyder Aff. Ex. H; *see also* USF&G's Findings of Fact # 21-25). USF&G offset a portion of its losses by recouping $167,932.42 in remaining contract funds on the Bonded Projects. (Snyder Aff., Ex. C; *see also* USF&G's Finding of Fact # 26). According to USF&G, the Defendants are jointly and severally liable for USF&G's damages totaling $1,230,689.98, plus interest and any further legal costs that USF&G incurs after June 2009, pursuant to the parties' Indemnity Agreement.

On November 6, 2008, USF&G filed the present action to recoup its costs against Defendants. USF&G now moves for summary judgment. For the reasons set forth below, the court **GRANTS** USF&G's motion.

## II. Construction of the Indemnity Agreement

It is undisputed that Indiana law governs this action. In Indiana, indemnity agreements are subject to the same rules of construction as any other contract. *See Plumlee v. Monroe Guaranty Ins. Co.*, 655 N.E.2d 350, 359 (Ind. Ct. App. 1995); *TLB Plastics Corp., Inc. v. Procter and Gamble Paper Products Co.,* 542 N.E.2d 1373, 1377

(Ind. Ct. App. 1989). Thus, where, as here, the terms of an indemnity agreement are clear and unambiguous, the court may enforce the agreement according to its terms, thereby making summary disposition particularly appropriate. *Plumlee*, 655 N.E.2d at 359; *see also Hine v. Lim-O-Sol Co.*, 382 F.3d 716, 720 (7th Cir. 2004) (quoting *First Fed. Sav. Bank of Ind. v. Key Mkts., Inc.*, 559 N.E.2d 600, 604 (Ind. 1990)) ("When a court finds a contract to be clear in its terms and the intentions of the parties apparent, the court will require the parties to perform consistently with the bargain they made.").

### III. Discussion

Defendants do not dispute that the terms of the Indemnity Agreement require them to indemnify USF&G for certain payments and costs it has incurred. Rather, they contend that Defendants are not obligated to indemnify USF&G for any amounts that it paid, or costs that it incurred, that were not made in "good faith."

The clear and unambiguous terms of Paragraphs 6 and 9 of the Indemnity Agreement control the disposition of this case. Paragraph 6 reads:

> The UNDERSIGNED will indemnify the Surety and hold it harmless from and against all liability, losses, costs, damages, attorneys' fees, disbursements and expenses of every nature which the SURETY may sustain or incur by reason of, or relating to, having executed or procured the execution of any such BOND, or that may be sustained or incurred by reason of making any investigation of any matter, or prosecuting or defending any action in connection with any such BOND, or recovering any salvage or enforcing any provision of this Agreement. The UNDERSIGNED shall pay to the SURETY all money which the SURETY or its representatives may pay or cause to be paid and shall pay to the SURETY such sum as may be necessary to exonerate and hold it harmless with respect to any liability which may be asserted against the SURETY as soon as liability exists or is asserted against the SURETY, whether or not

>the SURETY shall have made any payment therefor.  In the event of any payment by the SURETY, the UNDERSIGNED further agree that in any accounting between the SURETY and the UNDERSIGNED, the SURETY shall be entitled to charge for any and all disbursements made by it in good faith under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity, or expediency existed.  As used herein, '*payments made in good faith*' shall be deemed to include *any and all payments made by the SURETY except those made with deliberate and willful malfeasance*.

(Indemnity Agreement ¶ 6) (emphasis added).  Paragraph 9 reads: "The vouchers or other evidence of payments by the SURETY shall be *prima facie* evidence of the fact and amount of liability of the UNDERSIGNED to the SURETY."  (*Id.* ¶ 9).

USF&G provided the court with specific documentation of its payments to Aymir's subcontractors and suppliers, as well as documentation related to its other costs and expenses, including attorneys' fees.  Thus, USF&G met its prima face case pursuant to Paragraph 9 of the Indemnity Agreement.  Therefore, pursuant to Paragraph 6 of the Indemnity Agreement, the burden shifts to Defendants to substantiate any allegations that specific losses were incurred with "deliberate and willful malfeasance."  *See Far W. Ins. Co. v. J. Metro Excavating, Inc.*, 2008 WL 859182, at *14 (N.D. Ind. March 8, 2008) (finding that once the indemnitor made its prima facie showing of the fact and extent of the defendants' liability, the burden then shifted to the defendants to show that the payments were made in bad faith); *see also United States Fid. & Guar. Co. v. Bilt-Rite Contractors, Inc.*, 2005 WL 1168374, at *3-4 (E.D. Pa. May 16, 2005) ("[T]he prima facie evidence clause and accompanying proofs [are] sufficient to shift the burden to

Defendants to provide evidence that Plaintiff cannot recover the costs, fees and expenses it incurred with respect to the Bonded Projects."); *United States Fid. & Guar. Co. v. Feibus*, 15 F.Supp. 579, 582-83 (M.D. Pa. 1998) (same).

Defendants' evidence in this case consists primarily of documents pertaining to USF&G's investigation and claims payments. For example, Defendants submitted letters from Mr. Ozdemir/Aymir, USF&G, and legal counsel in reference to the Bonded Projects, applications and certifications for payment from subcontractors and suppliers, copies of the relevant performance bonds, and matters of that sort. These documents cited by Defendants do not contain any evidence of "deliberate or willful malfeasance," or even any evidence of unreasonable conduct. Defendants offered the affidavits of Mr. Ozdemir and Mr. Riese, Mr. Ozdemir's proposed expert in the insurance claim and surety industry, in an attempt to interpret the record and offer their assertions of bad faith. These affidavits, however, are insufficient to meet their burden of proving *specific* facts that would substantiate their conclusory allegations of bad faith. For instance, the Defendants' argument that USF&G acted unreasonably on the Kokomo Project cites five blanket assertions from Mr. Ozdemir's affidavit (*see* Affidavit of Ersal Ozdemir ("Ozdemir Aff.") ¶¶ 39-40, 46-48) and four summary opinions from Mr. Riese's affidavit (*see* Affidavit of Tamara Riese ("Riese Aff.") ¶¶ 21-24). Mr. Ozdemir asserts that he disputed certain subcontractor claims on the Kokomo Project and that Aymir had its own claims that could have been pursued, but he provides no factual substantiation for any of these statements. (Ozdemir Aff. ¶¶ 39-40, 46-48). Mr. Riese merely repeats Mr.

Ozdemir's unsubstantiated accusations and opines that USF&G acted unreasonably in handling the claims on the Kokomo Project. (Riese Aff. ¶¶ 21-24).

The Defendants follow the same pattern for the Irvington Project (Ozdemir Aff. ¶¶ 20, 22-23, 25-27, 32; Riese Aff. ¶¶ 13-19) and for the Tippecanoe Project (Ozdemir Aff. ¶¶ 52, 56-59; Riese Aff. ¶¶ 25-29, 31-32). Indeed, Mr. Ozdemir makes general and unsubstantiated assertions that the terminations were improper, that he protested certain subcontractor claims, and that Aymir had its own claims, and Mr. Riese opines that those allegations show that USF&G acted unreasonably. The Defendants also cite a handful of other conclusory statements from Mr. Riese's affidavit, in which he second-guesses USF&G's actions and contends that USF&G did not adequately investigate claims, without offering any specific evidence from USF&G's claims file, which included over 8,000 pages, pertaining to the bond claims. (Riese Aff. ¶¶ 4, 7-12, 30, 32-34).

Finally, the Defendants seek to fault USF&G for exercising rights that it possesses under the Indemnity Agreement. The Defendants essentially repeat three unsubstantiated objections in their "bad faith" arguments for each individual project, which are summarized in their "Statement of Issues." First, they contend that several of USF&G's settlement payments to Aymir's unpaid subcontractors were unreasonable on the basis that they now object that Aymir had defenses, offsets, and claims against the claimants. (*See* Defendants' Brief, Statement of Issues Nos. 7-10). Second, the Defendants assert that USF&G should have challenged Aymir's terminations and also should have pursued purported claims – none of which are substantiated – for additional money and contract

balances against the Project Owners and subcontractors. (*Id*., Statement of Issues Nos. 11-15, 17). Third, the Defendants second-guess USF&G incurring $73,255.46 in performance bond losses on the Tippecanoe and Irvington Projects, arguing that the Surety should have challenged Aymir's terminations or else it should have compelled subcontractors to complete the work at no cost. (*Id*., Statement of Issues Nos. 1-6, 16, 18). Lastly, the Defendants question whether USF&G mitigated damages in incurring legal fees. (*Id*., Statement of Issues Nos. 19-21). These challenges are insufficient to raise a genuine issue of material fact because: (1) the standard is not one of "reasonableness," but rather one of "deliberate and willful malfeasance"; and (2) the terms of the Indemnity Agreement gave USF&G the right to complete the Bonded Projects. To that end, USF&G was entitled to settle the claims of subcontractors and to hire new subcontractors, to use its discretion to complete Aymir's remaining obligations under the defaulted contracts, and to seek legal counsel and to determine who to sue and who not to sue. Accordingly, and for the reasons more fully explained in USF&G's Moving and Reply Briefs, USF&G's motion for summary judgment must be **GRANTED**.

## IV. Conclusion

For the reasons forth above, the court **GRANTS** USF&G's Motion for Summary Judgment (Docket # 38). Mr. Ozdemir and Ms. Bolding[1] are jointly and severally liable

---

[1] The docket reflects that Ms. Bolding is in the process of settling her cross-claim for indemnity against Mr. Ozdemir. (Docket # 91). However, as the settlement has not been finalized, Ms. Bolding is included in this Entry.

for USF&G's damages totaling $1,230,689.98, plus interest and any further legal costs that USF&G incurs after June 2009. The court **WITHHOLDS JUDGMENT**, however, as the total amount of attorneys' fees to be awarded is not known at this time. Accordingly, the court **ORDERS** USF&G to file with the court on or before April 30, 2010, an affidavit with supporting documentation that sets forth the amount of costs and expenses in addition to the original requested amount of $109,717.83, which have been incurred as of June 2009.

**SO ORDERED** this __30th__ day of March 2010.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

Christopher M. Anzidei
WATT TIEDER HOFFAR & FITZGERALD, LLP
canzidei@wthf.com

Chad M. Buell
LAW OFFICES OF ST. PAUL TRAVELERS
cbuell@travelers.com

Michael Francis Drewry
DREWRY SIMMONS VORNEHM, LLP
mdrewry@drewrysimmons.com

Stefan A. Kirk
SCHUCKIT & ASSOCIATES P.C.
skirk@schuckitlaw.com

Nathan A. Leach
DREWRY SIMMONS VORNEHM, LLP
nleach@drewrysimmons.com

Robert J. Schuckit
SCHUCKIT & ASSOCIATES, P.C.
rschuckit@schuckitlaw.com

Adam M. Tuckman
WATT TIEDER HOFFAR & FITZGERALD, LLP
atuckman@wthf.com